IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JENNIFER K. BLACK                                                                                   PLAINTIFF

v.                                              Case No. 2:15-CV-02130

VALLEY BEHAVIORAL HEALTH
SYSTEM, LLC; ACADIA HEALTHCARE
COMPANY, INC.                                                                                      DEFENDANT

**OPINION AND ORDER**

Before the Court are Defendants' Valley Behavioral Health System, LLC's ("Valley") and Acadia Healthcare Company, Inc.'s ("Acadia") motion for summary judgment (Doc .29), Plaintiff Jennifer K. Black's response, Defendants' reply, and the parties' supporting documents; Black's motion for leave (Doc. 39) to file her separate statement of facts in opposition to Defendants' motion for summary judgment out of time, and Defendants' response; Defendants' motion to bifurcate any punitive damages phase of the jury trial (Doc. 43); and Defendants' motion in limine (Doc. 45).  Having thoroughly reviewed the filings and exhibits on record in this case, the Court finds that Defendants' motion for summary judgment (Doc. 29) should be GRANTED. Accordingly, all other pending motions (Docs. 39, 43, and 45) are DENIED AS MOOT.[1]

**I.      Background**

In June 2013, Black started working as a registered nurse at Valley's acute psychiatric facility in Barling, Arkansas.[2]  Throughout her employment with Valley, Black was subject to

---

[1] The Court notes that allowing Black's statement of facts to be filed out of time would not save Black's case from dismissal, as the responses therein consisted primarily of general denials or disagreements without citation to any fact of record.

[2] The Court recognizes that Black disputes whether she should be considered an employee of Valley rather than Acadia; however, because neither Valley nor Acadia is liable under the causes of action asserted by Black, the Court refers to Valley as Black's employer for simplicity.

disciplinary actions on multiple occasions. In July 2013, Black was issued a written warning for potentially neglectful behavior toward a minor patient Black had been tasked with preparing for discharge from the facility. In October 2013, observations and complaints about Black's communications and dealings with her coworkers led her to receive a performance evaluation that noted the need to improve in how she treated and communicated with her coworkers. In January 2014, Black was again issued a written warning for unacceptable behavior, at least some of which she admitted to in her deposition. Black received yet another written warning in April 2014 for yelling at a coworker, and one week later was placed on a 90-day probationary period due to continued complaints about her inappropriate behavior toward coworkers. Similar altercations continued through July 17, 2014, when the Clinical Director counseled Black for her interactions with coworkers. On September 2, 2014, after Black's behavior continued throughout August 2014, the Director of Nursing, Cynthia Ellis, approached Black with the most recent coworkers' complaints in an attempt to have Black improve her behavior.

Black contends that during her meeting with Ellis, Ellis forced Black to pray with her and several others, and assigned Black to bring Bible verses to work every day thereafter. Apparently, Black brought Bible verses to work on three or four occasions after that meeting. In addition, Black contends that on a separate occasion a coworker attempted to grab Black's hand as Black was walking down a hall, which Black believes was an effort to again force Black into prayer.

On October 14, 2014, Black made a call to Valley's Compliance Hotline to submit a complaint about Ellis having required Black to bring Bible verses to work approximately five weeks prior. Black contends that Ellis implied Black's job would be terminated if she did not bring in the Bible verses. Black did not inform Ellis or any other supervisor about having made

2

this call, and Black has otherwise provided no evidence that Ellis or any other supervisor was aware of it having been made.

On October 15, 2014, Ellis met individually with Black, as well as other employees, about attendance issues.[3] Ellis noted that Black had eight absences, but Black countered that she had made arrangements to switch workdays with coworkers and otherwise had been excused. Black contends that Ellis was unware of the arrangements because Ellis had not taken on the role of nursing director until after certain absences had occurred. Ultimately, Ellis informed Black that further absences would result in her termination.

On October 26, 2014, Black went to an emergency room with gastrointestinal problems and was ultimately hospitalized for five days. Black soon after inquired about receiving FMLA leave for time missed related to her treatment and was advised of the appropriate procedure to follow. On November 5, 2014, Black's supervisors received another complaint about Black's behavior toward a pediatric patient, and an anonymous complaint was made through the Compliance Hotline.

On November 11, 2014, Black's supervisor conferred with Valley's Chief Executive Officer, and they ultimately decided to terminate Black's employment. Coincidentally, also on November 11, 2014, Black was hand-delivering her FMLA paperwork—which she mistakenly believed was already faxed to Valley from her doctor's office—when she was informed of her termination.

II.     **Legal Standard**

---

[3] Apparently, the report from Ellis's meeting with Black is dated October 14, 2014; however, Black is certain that this was in error because she remembered being called in the day after making her call to the Compliance Hotline. The Court will give Black the benefit of the doubt here, but it does not change the Court's analysis.

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In order to grant summary judgment, the evidence must be such that no reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Therefore, the moving party must demonstrate the absence of genuine issues of material fact to be resolved. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the Court must resolve all controversies in favor of the non-moving party, take the non-moving party's evidence as true, and draw all justifiable inferences in favor of that party. *Matsushita Elect. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, in opposing a motion for summary judgment, the non-moving party may not rest on allegations or denials in its pleadings but must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. These specific facts showing a genuine issue for trial are to be established by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c). Ultimately, "[w]hile employment discrimination cases are often fact intensive and dependent on nuance in the workplace, they are not immune from summary judgment, and there is no separate summary judgment standard for employment discrimination cases." *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010) (rejecting prior assertions that summary judgment should rarely be granted in employment discrimination cases). In addition, the Court agrees with the principle propounded by the Seventh Circuit that "a lawsuit is not a game of hunt the peanut. Employment discrimination cases are extremely fact-intensive, and neither appellate nor district courts are obliged in our adversary

system to scour the record looking for factual disputes . . . ." *Greer v. Bd. of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001) (citation and internal quotations omitted).

**III.    Analysis**

Throughout this case, Black's theories of liability have been unclear. As best the Court can discern, however, Black has asserted claims for: (1) discriminatory retaliation under Title VII for having been terminated after complaining about forced religious-based practices; (2) discriminatory retaliation under the FMLA by being terminated in retaliation for submitting FMLA paperwork; and (3) intentional infliction of emotional distress.[4]

**A.    Title VII and FMLA Discriminatory Retaliation**

When, as here, a plaintiff presents no direct evidence to support a claim of retaliatory discrimination under either Title VII or the FMLA, each respective claim is analyzed under the burden shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012) (applying *McDonnell Douglas* to a Title VII retaliation claim); *Phillips v. Mathews*, 547 F.3d 905, 912 (8th Cir. 2008) (applying *McDonnell Douglas* to an FMLA retaliation claim). Under this framework, the plaintiff must first present a prima facie case of Title VII or FMLA retaliation. *Id.* Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.*; *McDonnell Douglas Corp.*, 411 U.S. at 802. The plaintiff must then demonstrate that the defendant's proffered reason is a pretext for unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08 (1993); *Miners v. Cargill*

---

[4] Black makes vague reference to some kind of hostile work environment theory and attempts to use the act of being forced to pray as its own Title VII violation, rather than using her termination for complaining about such practices as the action giving rise to liability. Because there is a complete lack of factual basis and comprehensible legal reasoning supporting any such claims, the Court will not address them further.

5

*Comms., Inc.*, 113 F.3d 820, 823 (8th Cir. 1997). To demonstrate pretext, the plaintiff must offer sufficient evidence for a reasonable trier of fact to infer discrimination. *Lors v. Dean,* 595 F.3d 831, 834 (8th Cir. 2010). Specifically, "[a] plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Gibson*, 670 F.3d at 854. The Eighth Circuit has also provided that there are "at least two routes for demonstrating a material question of fact as to pretext. First a plaintiff may succeed indirectly by showing the proffered explanation has no basis in fact. Second, a plaintiff can directly persuade the court that a prohibited reason more likely motivated the employer." *Id.* (citations and internal quotations omitted). "[T]he evidence produced to show a prima facie case and the 'inferences drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual.'" *Miners*, 113 F.3d at 823 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 10 (1981).

Even assuming Black can make a prima facie showing of retaliatory discrimination under both Title VII and the FMLA, which is a generous assumption to make, the Court finds that she has not presented sufficient evidence to demonstrate or even give rise to a favorable inference that Valley's actions were merely pretext for discrimination. For both claims, Valley has presented a legitimate non-discriminatory reason for Black's termination supported by the extensive records of Black's disciplinary history and conflicts with coworkers and patients. In contrast, Black has not presented any evidence, other than her own allegations and general denials of Defendants' evidence, to demonstrate that her disciplinary history was somehow not based in fact or was otherwise illegitimate. Black points to the correlation in time between her complaint and being called in to discuss absences, as well as her turning in FMLA paper work and termination.

6

However, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 723 (8th Cir. 2008). Nothing about the timing in this case calls into question Black's significant disciplinary history or whether Valley legitimately relied on that disciplinary history as a basis for Black's termination. Because Black presented no evidence from which a jury could possibly conclude that Valley's proffered legitimate reason for her termination was pretextual, and because that legitimate reason for Black's termination is applicable to Black's claims under both Title VII and the FMLA, the Court finds that each of those claims should be DISMISSED WITH PREJUDICE.

      **B.**      **Intentional Infliction of Emotional Distress—The Tort of Outrage**

In Arkansas, intentional infliction of emotional distress is referred to as the tort of outrage. To establish liability for the tort of outrage, the plaintiff must show:

> (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Island v. Buena Vista Resort*, 103 S.W.3d 671, 681 (Ark. 2003) (citing *Faulkner v. Ark. Children's Hosp.*, 69 S.W.3d 393 (Ark. 2002)). "The Arkansas Supreme Court has explained that the tort of outrage is found 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Westphal v. Lase Med Inc.*, 2011 WL 1374729, at * 5 (E.D. Ark. April 11, 2011) (quoting *Palmer v. Ark. Council on Econ. Educ.*, 40 S.W.3d 784, 791–92 (Ark. 2001)). Black admits that there is "not specific testimony or statement of the actor's intention" for this cause of action, but asserts that there remains a question of fact for

7

determination. The Court disagrees and finds no evidence supporting any of the above-mentioned elements required to prove the tort of outrage. In addition, having sufficient knowledge of the underlying facts of this case, the Court is satisfied that no reasonable juror could possibly find the occurrence of outrageous and extreme conduct to the degree necessary to impose liability. Accordingly, the Court finds that Black's claim for the tort of outrage should also be DISMISSED WITH PREJUDICE.

**IV. Conclusion**

IT IS THEREFORE ORDERED that Defendants' motion for summary judgment (Doc. 29) is GRANTED and the Plaintiff's complaint is hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's motion for leave (Doc. 39) to file her separate statement of facts in opposition to Defendants' motion for summary judgment out of time; Defendants' motion to bifurcate any punitive damages phase of the jury trial (Doc. 43); and Defendants' motion in limine (Doc. 45) are each DENIED AS MOOT.

IT IS SO ORDERED this 16th day of June 2016.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE